B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
|---|---|

| **PARTY** (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR | BANKRUPTCY CASE NO. | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| **CRYPTO COLO CENTER CORP** <br> **and** <br> **NATAN HOLDINGS, LLC,** | ) <br> ) <br> ) <br> ) | |
| **Plaintiffs,** | ) <br> ) | |
| **v.** | ) <br> ) | Adv. Pro. No. _____ |
| **DEI VITAE ENTERPRISES, LLC,** <br> **JAMES REUBEN BURTON, JR.,** <br> **SUSAN HUNT BURTON, and** <br> **MARIGNY OIL AND GAS, LLC,** | ) <br> ) <br> ) <br> ) <br> ) | |
| **Defendants.** | ) <br> ) | |
| **In re:** | ) <br> ) <br> ) | Case No. 23–30128 <br> Chapter 13 |
| **JAMES REUBEN BURTON, JR.,** <br> **and SUSAN HUNT BURTON,** | ) <br> ) <br> ) | |
| **Debtors.** | ) <br> ) | |
| **In re:** | ) <br> ) | |
| **DEI VITAE ENTERPRISES, LLC,** | ) <br> ) | Case No. 23–30148 <br> Chapter 11 |
| **Debtor.** | ) <br> ) | |

## COMPLAINT

Natan Holdings, LLC, an Illinois limited liability company, and Crypto Colo

Center Corp, a Kansas corporation, by and through the undersigned counsel,

complain of defendants Dei Vitae Enterprises, LLC ("DVE"), the debtor in chapter 11

case number 23-30148, James Reuben Burton, Jr. and Susan Hunt Burton, debtors

in chapter 13 case number 23-30128, and Marigny Oil & Gas, LLC, as follows.

## PARTIES

1.      Plaintiff Natan Holdings, LLC ("Natan Holdings") is an Illinois limited

liability company.

2.      Plaintiff Crypto Colo Center Corp ("CCC") is a Kansas corporation.

3.      Defendant Dei Vitae Enterprises, LLC ("DVE") is a North Carolina

limited liability company.

4.      Defendant James Reuben Burton, Jr. is a resident and citizen of Union

County, North Carolina.

5.      Defendant Susan Hunt Burton is a resident and citizen of Union County,

North Carolina.

6.      Defendant Marigny Oil & Gas, LLC is a Wyoming limited liability

company.

7.      Defendant James Reuben Burton has always been DVE's "Managing

Director."

8.      Defendant Susan Hunt Burton is and always has been DVE's member

holding most of the equity interests in DVE.

## JURISDICTION AND VENUE

9.      The bankruptcy court has jurisdiction over this action under 28 U.S.C.

§§ 157 and 1334.

10.     The Second, Third, Fifth, and Sixth Claims for Relief (¶¶ 168–171, 172–175, 179–182, and 183–187, *infra*) are core matters under 28 U.S.C. § 157(b)(2)(H).

11.     The Eighth and Ninth Claims for Relief (¶¶ 201–204, *infra*) are core matters under 28 U.S.C. § 157(b)(2)(I).

12.     The Eighth and Ninth Claims for Relief arise in the Burtons' bankruptcy case.

13.     The First, Fourth, Seventh, and Tenth Claims for Relief are related to the Burtons' and DVE's bankruptcy cases.

14.     Venue for this action is proper in this district under 28 U.S.C. § 1409.

15.     This action is brought as an adversary proceeding in the bankruptcy cases of DVE and the Burtons under Fed. R. Bankr. P. 7001(1), (6), (7), and (9).

## ALLEGATIONS OF FACT

### Mr. Burton, as the Managing Director of DVE, Makes Material Misrepresentations Regarding KLMKH, Inc., a North Carolina Corporation

16.     Natan Holdings' principal, Anthony Melikhov, first met Mr. Burton in the summer of 2019.

17.     Mr. Burton represented that he was the Managing Director of DVE and that DVE was the largest shareholder of KLMKH, Inc. (the "North Carolina Company"), a North Carolina corporation involved in oil and gas production in Kansas.

18.     Between June and September of 2019, Mr. Burton gave Mr. Melikhov multiple financial documents and projections for the North Carolina Company,

including but not limited to an "executive summary;" a cash flow statement dated July 31, 2019, with projections of the North Carolina Company's profits and losses; and a balance sheet for the North Carolina Company.

19.    True copies of the executive summary, cash flow statement, and balance sheet referenced in the preceding paragraph 21 are attached as **Exhibit 1**, **Exhibit 2**, and **Exhibit 3**, respectively.

20.    The North Carolina Company balance sheet (Ex. 3) states that "[i]n accordance with SFAS No. 69, our reserves and the future net revenues were determined using market prices and accepted estimated future market pricing for natural gas and oil."

21.    SFAS 69, otherwise known as Standard 69 of the Financial Accounting Standards Board, was no longer effective in 2019.

22.    SFAS 69 had been superseded on July 1, 2009.

23.    Upon information and belief, Mr. Burton included the reference to SFAS 69 to make mislead Mr. Melikhov and Natan Holdings by giving the balance sheet the appearance of having been properly prepared or reviewed by a certified public accountant.

24.    Upon information and belief, the balance sheet (Ex. 3) materially overstated KLMKH's net worth.

25.    Upon information and belief, the balance sheet (Ex. 3) was prepared by Mr. Burton as part of a scheme to defraud Natan Holdings.

26.     In reliance on Mr. Burton's oral and written representations, Natan Holdings invested in the North Carolina Company in September 2019.

27.     After Natan Holdings invested in the North Carolina Company, Mr. Burton continued to make material misrepresentations, and provided multiple false financial projections and documents, to Mr. Melikhov to induce Natan Holdings to advance funds to DVE, for the benefit of the North Carolina Company, which DVE and Mr. Burton misappropriated to pay for personal expenses of Mr. and Mrs. Burton.

### Mr. Burton Induces Natan Holdings to Become Liable for a Multi-Million Dollar Obligation of the North Carolina Company By Misrepresenting the North Carolina Company's Oil Production

28.     In 2020, the North Carolina Company obtained financing for the North Carolina Company from ARC LPW I, LLC ("ARC").

29.     The financing was evidenced by a Volumetric Production Purchase Agreement (the "VPP Agreement"), dated February 20, 2020, by and between the North Carolina Company and ARC.

30.     A true copy of the VPP Agreement is attached as **Exhibit 4**.

31.     The VPP Agreement recites that it is a loan from ARC to the North Carolina Company. VPP Agreement, Ex. 4, at §§ 3.01 (captioned "Loan") and 5.01 (captioned "Obligation to Pay").

32.     Part of the proceeds from the ARC financing were earmarked by the North Carolina Company to purchase "Global Energy Solutions" from DVE.

33.  The North Carolina Company transferred or caused the transfer of $564,400 of the proceeds of the ARC financing to DVE to purchase "Global Energy Solutions."

34.  DVE and the North Carolina Company executed a "Bill of Sale and Conveyance of Global Energy Solutions" on or about February 24, 2020.

35.  A true copy of this Bill of Sale and Conveyance of Global Energy Solutions is attached as **Exhibit 5**.

36.  The ARC financing was secured by (i) the North Carolina Company's obligation to produce and sell oil and to remit the proceeds to ARC. VPP Agreement, Ex. 4, at § 2.01) and (ii) essentially all the North Carolina Company's assets. *Id.*, Ex. 4, at § 2.08 ("Security Agreement"); *see also* Assignment of Contracts, Minerals, and Intangibles, dated February 23, 2020, by the North Carolina Company for the benefit of ARC (a true copy of which, excluding the signature of the North Carolina Company, is attached as **Exhibit 6**), and Security Agreement, dated February 21, 2020, by and between the North Carolina Company and ARC (a true copy of which, excluding the signature of the North Carolina Company, is attached as **Exhibit 7**).

37.  ARC perfected its security interests in the North Carolina Company's assets.

38.  Based on representations by Mr. Burton regarding the North Carolina Company's purported oil and gas production, Natan Holdings became liable for the payment of the North Carolina Company's obligations to ARC by executing and delivering that certain $3,425,000 Promissory Note, dated February 21, 2020, by

Natan Holdings in favor of ARC (a true copy of which, excluding the signature of Natan Holdings, is attached as **Exhibit 8**; the "Note").

39.    Upon information and belief, Mr. Burton forged documents regarding the North Carolina Company's and Global Energy Solutions' oil production to mislead Natan Holdings and the North Carolina Company's directors so that DVE would obtain the North Carolina Company's corporate approval for the ARC financing.

40.    From September 2019 through April 2020, neither Global Energy Solutions nor the North Carolina Company produced material amounts of oil.

41.    Mr. Burton presented documents to the North Carolina Company's directors purportedly prepared by Maclaskey Oilfield Services, Inc. for the months of September 2019 through April 2020.

42.    True copies of these production reports are attached as **Exhibit 9** (collectively, these documents are the "Forged Production Reports").

43.    Upon information and belief, Mr. Burton also delivered certain of the Forged Production Reports to ARC.

44.    Maclaskey Oilfield Services has denied that it produced the Forged Production Reports.

45.    The Forged Production Reports show that Maclaskey Oilfield Services purportedly paid (a) Global Energy Solutions, Inc. for oil produced from September through December 2019 and (b) the North Carolina Company for oil produced from January through April 2020.

7

46.     On February 24, 2020, DVE represented to the North Carolina Company that Global Energy Solutions was in good standing.

47.     In 2020, Global Energy Solutions was not in good standing in the State of Kansas or the State of Delaware.

48.     Global Energy Solutions was registered to do business in Kansas as a foreign corporation.

49.     Global Energy Solutions was originally incorporated in Delaware.

50.     Global Energy Solutions' right to conduct business in Kansas was forfeited in July 2018.

51.     Upon information and belief, Mr. Burton reported the purported sales of oil from Global Energy Solutions to Maclaskey Oilfield Services as part of a plan or scheme to mislead or defraud the North Carolina Company's directors, Natan Holdings, and others.

52.     Upon information and belief, Mr. Burton created the Forged Production Reports.

53.     Upon information and belief, Mr. Burton created and distributed the Forged Production Reports as part of a plan or scheme to mislead or defraud the North Carolina Company's directors, Natan Holdings, and others.

54.     Natan Holdings would not have executed the Note (Ex. 8) had Natan Holdings known the true oil and gas production numbers for the North Carolina Company.

55.    Upon information and belief, Global Energy Solutions had little or no value on February 24, 2020.

56.    Upon information and belief, the purported sale of "Global Energy Solutions" from DVE to the North Carolina Company was part of a scheme to defraud the North Carolina Company.

57.    Natan Holdings would not have executed the Note (Ex. 8) had Natan Holdings known that the purported sale of Global Energy Solutions to the North Carolina Company was a fraudulent transaction.

### Mr. Burton Produces Forged Documents To Mislead Natan Holdings in Order to Induce Natan Holdings to Agree to a Merger Between the North Carolina Company and Orpheum Property, Inc.

58.    After the North Carolina Company closed on the ARC transaction and received payment from ARC, the North Carolina Company and a Delaware corporation, Orpheum Property, Inc. ("Orpheum"), discussed the possibility of a reverse merger.

59.    Natan Holdings, as the second largest shareholder of the North Carolina Company, was induced to agree to the merger based on representations and statements made by Mr. Burton.

60.    Before the merger, Mr. Burton represented that the North Carolina Company was producing 100 barrels of oil per day.

61.    On January 21, 2021, Mr. Burton, as the General Manager of the North Carolina Company, emailed Mr. Melikhov, Mrs. Burton, and others, claiming that he

was "restoring full production" at the wells purportedly owned or leased by the North Carolina Company.

62.     A true copy of this January 21, 2021, email is attached as **Exhibit 10**.

63.     In the email, Mr. Burton represented that the North Carolina Company had "about 1500 barrels [of oil] in the tanks throughout the field," with "441 barrels [of oil] in the [Bower Property (this capitalized term is defined in paragraph 108 of this Complaint)] production tanks treated and ready to ship... [and] another 212 barrels [of oil] needing treatment."

64.     Mr. Burton further represented that the North Carolina Company, on average, was producing 74 barrels of oil per day and "should have [about] 100 barrels a day by merger time."

65.     Contrary to Mr. Burton's representations, the North Carolina Company did not produce oil or gas in amounts claimed by Mr. Burton.

66.     In early 2021, the North Carolina Company merged with Orpheum and became KLMKH, Inc., a Delaware corporation ("KLMKH").

67.     Following the merger, DVE was the largest shareholder in KLMKH, and Natan Holdings was the second largest shareholder in KLMKH.

68.     Following the merger between the North Carolina Company and Orpheum Property, Inc., KLMKH was liable for all obligations to ARC.

**KLMKH Failed to Produce Sufficient Oil or Gas
to Satisfy its Obligations to ARC**

69.     KLMKH could not meet its payment obligations to ARC or its production obligations under the VPP Agreement, as amended.

70.     ARC gave notice of default to KLMKH.

71.     On March 22, 2021, ARC sued KLMKH in the United States District Court for the Southern District of Texas (case number 4:21-cv-926), complaining that KLMKH had breached its obligations to ARC under the VPP Agreement by failing to pay ARC. See Plaintiff ARC LPW I, LLC's Complaint (a true copy of which, excluding exhibits thereto, is attached as **Exhibit 11**) at ¶¶ 50, 51.

72.     Natan Holdings and the directors appointed by Orpheum Property discovered that KLMKH and the North Carolina Company would need to produce substantially more oil to repay ARC and that KLMKH could not increase production without significant additional capital investment.

73.     KLMKH consented to the entry of judgment for ARC, for $4,667,880, in ARC LPW I, LLC v. KLMKH, Inc., Civil Action No. 4:21-cv-926 (S.D. Tex. June 7, 2021).

74.     A true copy of the Stipulation and Order Disposing of Action and Claims and Consenting to Entry of Judgment in the Texas litigation is attached as **Exhibit 12**.

75.     ARC then began proceedings in Kansas to foreclose on its security interest in KLMKH's assets.

76.     On the day scheduled for the foreclosure sale by ARC, KLMKH filed a chapter 11 bankruptcy petition in this Court.

77.     After the first chapter 11 case was dismissed for KLMKH's failure to provide proof of adequate insurance, KLMKH filed a second chapter 11 bankruptcy petition in this Court.

78.     The second KLMKH bankruptcy case was dismissed by order of this Court.

79.     Following the dismissal of KLMKH's second bankruptcy case, ARC recommenced foreclosure proceedings in Kansas and foreclosed on its security interests in KLMKH's assets.

### DVE and the Burtons Steal Money From
### Natan Holdings Through Mr. Burton's False Statements

80.     About two months after KLMKH closed on the ARC financing, Mr. Burton told Anthony Melikhov, Natan Holdings' principal, that Mr. Burton had access to a special lending program offered by Fifth Third Bank which would result in a loan, on favorable terms, and at a favorable interest rate, in an amount of 2.5 times the amount DVE and Natan Holdings could pool together.

81.     Mr. Melikhov told Mr. Burton that Natan Holdings' pro rata portion of the loan proceeds would be used to recapitalize KLMKH.

82.     Mr. Burton told Mr. Melikhov that DVE would use its portion of the loan proceeds to satisfy Mr. Burton's criminal restitution obligations to the United States of America.

83.     In April 2020, Natan Holdings wired $2,204,600 (the "Natan Holdings Funds") to DVE in reliance on Mr. Burton's misrepresentations that DVE would add

its funds and that the combined funds would be used to obtain a loan from Fifth Third

Bank for 2.5 times the amount of the combined Natan Holdings/DVE funds.

84.    Upon information and belief, Mr. Burton induced Natan Holdings to

advance $2,204,600 to DVE by false representations, if not actual fraud.

85.    DVE became Natan Holdings' agent for the Natan Holdings Funds.

86.    Mr. Burton became a subagent for the Natan Holdings Funds.

87.    The transaction with Fifth Third Bank was never consummated.

88.    Notwithstanding Mr. Burton's failure to obtain a loan from Fifth Third

Bank, DVE returned only $700,000 of the Natan Holdings Funds to Natan Holdings.

89.    After returning only $700,000 to Natan Holdings, DVE executed a

$1,504,600 promissory note in favor of Natan Holdings (the "Note") to evidence its

obligation. The Note had an original maturity date of June 18, 2020.

90.    On June 7, 2020, before the Note's original maturity date, Mr. Burton

represented to Mr. Melikhov that: (i) Mr. Burton had transferred Natan Holdings'

funds to Jay Wright, Mr. Burton's attorney; and (ii) Fifth Third would fund the loan

by June 9, 2020. *See* email from Mr. Burton to Mr. Melikhov, June 7, 2020, at 2:29

p.m. (a true copy of which is attached as **Exhibit 13**).

91.    Mr. Burton made other false statements to, and sent false or forged

documents to, Mr. Melikhov, Natan Holdings' principal, to obtain an extension of the

Note's maturity from June 18, 2020, until November 30, 2020.

92.    DVE failed to pay Natan Holdings the balance due on the Note by the

extended maturity date of November 30, 2020.

93.     Instead of using the Natan Holdings Funds to obtain a loan from Fifth Third Bank, DVE transferred over $1,000,000 of the Natan Holdings Funds to or for the benefit of the Burtons.

94.     The Burtons used the misappropriated Natan Holdings Funds to buy their current residence at 105 Graham Hall Court in Matthews, North Carolina 28104 (the "Burtons' Residence").

95.     The deed for the house recites that the Burtons paid $650,000 for the Burtons' Residence. (A true copy of this deed is attached as **Exhibit 14**.)

96.     Mr. Burton kept making misrepresentations to Mr. Melikhov regarding the repayment of the Note. As recently as last year (2022), Mr. Burton sent documents claiming that US Bank had wired money to Natan Holdings' account at Fifth Third Bank. These documents include purported screenshots evidencing a wire transfer and text messages, one of which has a fake wire transfer number.

97.     True copies of screenshots of text messages from Mr. Burton to Mr. Melikhov, from September 16, 2022, and September 22, 2022 (the "Text Messages"), are attached as **Exhibit 15**.

98.     Natan Holdings never received any of the wire transfers that Mr. Burton alleged were sent to Natan Holdings.

99.     The Text Messages show that Mr. Burton, acting on behalf of DVE, used false pretenses, if not actual fraud, in connection with DVE's obligations to Natan Holdings.

100.    Mr. Burton's and DVE's misappropriation of the Natan Holdings Funds by making misrepresentations about a loan from Fifth Third Bank is referred to as the "Fifth Third Bank Loan Scheme."

101.    Natan Holdings sued DVE for failure to pay the Note. *Natan Holdings, LLC v. Dei Vitae Enterprises, LLC,* case no. 21-CVS-3227, in the Superior Court Division of the General Court of Justice for Mecklenburg County, North Carolina (the "North Carolina Action").

102.    DVE's debt to Natan Holdings has been reduced to a judgment in the North Carolina Action. *See* Default Judgment, May 12, 2021, in *Natan Holdings, LLC v. Dei Vitae Enterprises, LLC,* case no. 21-CVS-3227, in the Superior Court Division of the General Court of Justice for Mecklenburg County, North Carolina (a true copy of this Default Judgment is attached as **Exhibit 16**).

103.    DVE did not appeal the Default Judgment.

104.    DVE, however, has scheduled its obligation to Natan Holdings as "disputed."

105.    The Default Judgment is final and not subject to appeal.

106.    The North Carolina Default Judgment was domesticated in Kansas.

107.    DVE assigned the Default Judgment to CCC on November 16, 2022. *See* Assignment of Judgment, November 16, 2022, by DVE (a true copy of which is attached as **Exhibit 17**).

108.    CCC informed the Kansas court of its acquisition of the Default Judgment. *See* Notice of Assignment of Judgment and Substitution of Judgment

Creditor, filed November 21, 2022, in the Jefferson County, Kansas, District Court, case no. JF-2022-000026 (a true copy of which is attached as **Exhibit 18**).

### DVE and Its Managing Director, James Reuben Burton, Jr., Interfered With CCC's Attempts to Execute on the Default Judgment and Made Fraudulent Misrepresentations Regarding Marigny Oil & Gas

109.    In February 2022, DVE entered into a lease for property owned by DVE located at 8974 North Highway KS92, McLouth, Jefferson County, North Carolina (the "Bower Property").

110.    The Bower Property lease is evidenced by that certain Lease, dated as of February 16, 2022, by and between DVE and CCC (the "Lease;" a true copy of which is attached as **Exhibit 19**).

111.    Foreclosure proceedings were commenced in Kansas after Lease was executed and after the Default Judgment was domesticated.

112.    A company called "Marigny Partners Ltd." ("Marigny Partners") appeared in the Kansas foreclosure action as an intervenor and objected to the foreclosure sale.

113.    A true copy of Marigny Partners' Motion to Intervene, filed on November 18, 2022, is attached as **Exhibit 20**.

114.    Natan Holdings and CCC first heard of Marigny Partners from Mr. Burton in July 2022.

115.    Mr. Burton stated that Marigny Partners would provide him or DVE with enough money to satisfy the Default Judgment.

116.   In the motion to intervene, Marigny Partners asserted that it had acquired the right to act on behalf of "FZA Note Buyers, LLC," which allegedly had a note and mortgage secured by DVE's Kansas real property.

117.   Marigny Partners, however, admitted that the purported FZA Note Buyers mortgage had not been recorded when Marigny Partners moved to intervene.

118.   The same attorney who represented DVE in the foreclosure action, Justice B. King, also appeared as Marigny Partners' attorney in the Kansas foreclosure action.

119.   DVE and Marigny Partners, through the same attorney, filed a Response to [CCC's] Motion to Confirm Sheriff's Sale on December 16, 2022, in the Jefferson County, Kansas, District Court.

120.   A true copy of the DVE and Marigny Partners Response is attached as **Exhibit 21**.

121.   DVE and Marigny Partners attached the "Declaration of James Reuben Burton, Jr. in Support of Objection of Dei Vitae Enterprises, LLC and Marigny Partners Ltd. to Confirmation of Sheriff's Sale" (the "Reuben Burton Declaration").

122.   In this declaration, Mr. Burton states that the value of the Bower Property is estimated to be $15,989,000.

123.   The Kansas court denied Marigny Partners' motion to intervene.

124.   A sheriff's sale was conducted, and CCC submitted a successful credit bid for the Bower Property at the sheriff's sale.

125.    The Kansas court had scheduled a hearing on February 28, 2023, on CCC's motion to confirm the foreclosure sale of the Bower Property.

126.    On February 27, 2023, a general warranty deed was filed with the Jefferson County, Kansas Register of Deeds, purporting to transfer title to the Bower Property to "Marigny Oil & Gas." *See* General Warranty Deed, filed with the Jefferson County, Kansas, Register of Deeds on February 27, 2023, at file number 2023R0447 (a true copy of which is attached as **Exhibit 22**).

127.    The next day, DVE filed its chapter 11 petition minutes before the hearing in Kansas to confirm the foreclosure sale was to start.

128.    The General Warranty Deed (Ex. 22) recites that "Marigny Oil & Gas" paid DVE $2,200,000 for title to the Bower Property.

129.    Mr. Burton executed the deed as DVE's Managing Director.

130.    Mr. Burton has stated to Mr. Melikhov and CCC that DVE owned 50% of the equity interests in Marigny Oil & Gas. *See* email from Mr. Burton to Donato Guadagnoli [CCC's general counsel] and Max Smetannikov [CCC's Chief Executive Officer], August 5, 2022, at 7:42 a.m. (a true copy of which, with redactions, is attached as **Exhibit 23**).

131.    Upon information and belief, Marigny Oil & Gas's legal name is Marigny Oil and Gas, LLC, and it is a Wyoming limited liability company.

132.    No proceeds from the purported sale of the Bower Property to Marigny Oil & Gas were paid to CCC or Natan Holdings.

133.    Further, on March 8, 2023, Mrs. Burton stated in Court that DVE did not receive $2,200,000 for transferring title to the Bower Property to Marigny Oil & Gas.

134.    Mrs. Burton also stated on March 8 that the buyer, Marigny Oil & Gas, paid only an undisclosed part of the alleged $2,200,000 purchase price and that DVE received none of the purchase prices.

135.    Upon information and belief, the filing of the General Warranty Deed on February 27, 2023, and the timing of the filing of DVE's chapter 11 petition, were parts of a plan by DVE, James Reuben Burton, Jr., its Managing Director, and Susan Hunt Burton to hinder, delay or defraud CCC.

136.    On February 27, 2023, the Planning and Zoning Division of Jefferson County, Kansas, was scheduled to consider whether to allow CCC's application for a Conditional Use Permit of the Bower Property.

137.    A few hours before the hearing was to begin, Marigny Oil & Gas sent correspondence to Jefferson County that (i) informed Jefferson County of the purported sale of the Bower Property from DVE to Marigny Oil and Gas, (ii) asserted that DVE had terminated a lease between DVE and CCC for the Bower Property "for cause," (iii) stated Marigny Oil & Gas's opposition to CCC's application for a Conditional Use Permit, and (iv) requested that the application for the Conditional Use Permit be withdrawn.

138.    A true copy of this correspondence, dated February 24, 2023, is attached as **Exhibit 24**.

139.    This correspondence was sent by email by Lawrence D. O'Neill. *See* email from ldoneill@oneill-company.com to Dustin Parks (dparks@jfcountyks.com) and others, February 27, 2023, at 1:37 p.m. (a true copy of this email is attached as **Exhibit 25**).

140.    Upon information and belief, this Lawrence O'Neill is Lawrence Daniel O'Neill, an attorney who works in New York (but is not barred there).

141.    Mr. O'Neill was disbarred by the Maryland Court of Appeals on March 9, 2022, for dishonesty and other matters. *See Attorney Grievance Comm'n of Maryland v. Lawrence Daniel O'Neill,* Misc. Docket AG No. 41 (Md. Ct. App. March 9, 2022) (a true copy of which is attached as **Exhibit 26**).

142.    Mr. O'Neill also represented Marigny Partners Ltd. in its effort to buy assets of KLMKH, Inc. *See* Letter of Intent from Marigny Partners Ltd. to the Board of Directors of KLMKH, July 29, 2022 (a true copy of which is attached as **Exhibit 27**[1]); and Attestation Letter and Proof of Client Funds, from Lawrence Daniel O'Neill to the Board of Directors of KLMKH, August 1, 2022 (a true copy of which, with certain redactions, is attached as **Exhibit 28**).

143.    "L. Daniel O'Neill" signed the letter of intent as Marigny Partners' "Director and Counsel."

---

[1] This document was marked "Confidential" by Marigny Partners. KLMKH did not sign this document or a confidentiality agreement, nor did KLMKH otherwise agree to keep it or its contents confidential. A review of the document fails to reveal any proprietary or personnel information that could justify asking the Court to file it under seal.

144.    The Attestation Letter states that Marigny Partners is a client of O'Neill & Company, International Legal Advisors.

145.    The Burtons do not identify an ownership interest in Marigny Oil & Gas in their chapter 13 bankruptcy schedules.

146.    DVE does not identify an ownership interest in Marigny Oil & Gas in its chapter 11 bankruptcy schedules.

147.    Neither the Burtons' nor DVE's bankruptcy schedules disclose any pre-petition transfer of an ownership interest in Marigny Oil & Gas.

**DVE and Its Managing Director, James Reuben Burton, Jr.,
Stole Money From, and Made False Representations to, CCC in 2022**

148.    In addition to DVE's efforts to hinder and delay CCC's foreclosing on the Bower Property, DVE, and Mr. Burton deceived and, upon information and belief, defrauded CCC in separate transactions.

149.    On or about February 16, 2022, CCC and DVE entered into the Lease for the Bower Property.

150.    On or about May 19, 2022, CCC and Colo Energy Productions, LLC entered into a letter agreement with DVE regarding CCC's lease of the working interest in the oil and gas rights on the Bower Property.

151.    At about the same time in May 2022, CCC engaged Mr. Burton to manage CCC's oil and gas operations, including those on the Bower Property and assigned certain shares in CCC to DVE.

152.    Upon information and belief, Mr. Burton, individually and on behalf of DVE, engaged in fraudulent transactions wherein Mr. Burton would transfer money

21

from CCC's accounts to his own, or DVE's, accounts and then would submit fabricated invoices to CCC to conceal the misappropriation of CCC's funds.

153.    Upon information and belief, Mr. Burton took money from CCC to pay invoices, employees, or contractors. He paid only partial amounts to the employees, contractors, and vendors, and diverted the rest for himself and/or for DVE.

154.    On or about October 13, 2022, after the discovery of Mr. Burton's misappropriation of CCC's funds, Mr. Burton stopped acting to manage CCC's oil and gas operations and CCC canceled the shares in CCC that had been issued to DVE when Mr. Burton became CCC's manager of oil and gas operations.

### The Burtons' and DVE's Pre- and Post-Petition Attempts to Perpetrate a Fraud by "Selling" Assets to Marigny Oil & Gas

155.    The fraudulent schemes and actions of the Burtons and DVE are revealed by DVE's motions of March 21, 2023.

156.    In the first motion, DVE asks the Court to authorize it to sell substantially all its assets to Marigny Oil & Gas for $2,200,000. *See* Motion for Authority to Sell Property Free and Clear of All Liens, Claims, Interests, or Encumbrances Pursuant to Sections 105 and 363 of the Bankruptcy Code, March 21, 2023 (Doc. 27 in Chapter 11 Case No. 23-30148; the "DVE Sale Motion").

157.    Among the property that DVE seeks the Court's permission to sell is the Bower Property, the same property transferred by DVE to Marigny Oil & Gas by a General Warranty Deed dated February 24, 2023.

158.    DVE tries to evade the problem created by the fraudulent pre-petition sale of the Bower Property by attaching an "Affidavit of Equitable Interest" signed by Mrs. Burton.

159.    DVE also asks the Court to bless the sale of its assets to Marigny Oil & Gas pursuant to a Purchase and Sale Agreement, dated September 6, 2022, by and between DVE and Marigny Oil & Gas (the "MOG Sale Agreement").

160.    The MOG Sale Agreement states that Marigny Oil & Gas was supposed to be paying DVE the $2,200,000 purchase price by making a $30,0000 deposit "after closing" and by making monthly $200,000 payments.

161.    DVE's schedules show that DVE received only $30,000 from Marigny Oil & Gas, on August 11, 2022, five weeks before it signed the MOG Sale Agreement.

162.    DVE's schedules show no other payments from Marigny Oil & Gas.

163.    Further evidence of fraud is found in the Reuben Burton Declaration, in which Mr. Burton claimed on December 16, 2022, that the Bower Property was worth an estimated $15,989,000.

164.    DVE bought the Bower Property on or about March 24, 2020, for $500,000.

165.    A true copy of the Seller's Closing Statement and Purchaser's Closing Statement, showing a settlement date of March 24, 2020, is attached as **Exhibit 29**.

166.    DVE's purported valuation of the Bower Property, which is only part of the assets to be sold to Marigny Oil & Gas under the MOG Sale Agreement, has

swung from $500,000, the amount paid by DVE in March 2020, to nearly $16,000,000 on December 16, 2022, and back to less than $2,200,000 on March 21, 2023.

167.    The situational valuation of the Bower Property shows a fraudulent intent by DVE and Mr. Burton.

168.    As further evidence of fraud, DVE's schedules do not identify the MOG Sale Agreement as an executory contract.

169.    DVE's schedules also fail to identify Marigny Oil & Gas as having a claim against DVE.

170.    The proposed sale of DVE's assets to Marigny Oil & Gas cannot be reconciled with reasonable business practices.

171.    Upon information and belief, the proposed sale of DVE's assets to Marigny Oil & Gas is another example of the fraudulent practices of the Burtons and DVE.

### Marigny Oil & Gas's Post-Petition
### Actions to Further the Fraud

172.    On March 8, 2023, the attorney who represented DVE and Marigny Partners in the Kansas foreclosure proceedings sent correspondence to CCC's attorney. *See* correspondence from Justice B. King to David E. Bengston, March 8, 2023 (a true copy of which is attached as **Exhibit 30**; the "Lease Termination Letter").

173.    In this letter, DVE's counsel states that there is no connection between Marigny Oil & Gas and DVE.

174.    Mr. Burton, DVE's Managing Member, has stated that DVE owns 50% of the interests in Marigny Oil & Gas.

175.    Whether DVE's has or had an ownership interest in Marigny Oil & Gas, the Lease Termination Letter purports to terminate CCC's Lease of the Bower Property, effective March 13, 2023.

176.    Marigny Oil & Gas's and DVE's attorney asserts that Marigny Oil & Gas's authority to terminate the Lease arises from Marigny Oil & Gas's purported purchase of the Bower Property from DVE.

177.    DVE's attorney had the authority to state, on behalf of DVE, that Marigny Oil & Gas had bought the Bower Property from DVE.

178.    Yet DVE claims in its chapter 11 case that it still owns the Bower Property.

179.    The inconsistent statements by DVE's attorneys are not mere mistakes. They are the consequence of the fraud that Mr. Burton and DVE have been perpetrating.

## PLAINTIFFS' CLAIMS FOR RELIEF

### First Claim for Relief
### Misappropriation of Natan Holdings' Funds

180.    Natan Holdings and CCC incorporate the preceding allegations as if set forth in full herein.

181.    DVE and Mr. Burton made false representations to Mr. Melikhov about the Fifth Third Loan Scheme.

182.    Mr. Melikhov reasonably relied on Mr. Burton's misrepresentations.

183.    By accepting the Natan Holdings Funds for the stated purpose of obtaining a loan from Fifth Third Bank, DVE became Natan Holdings' agent for the Natan Holdings Funds.

184.    DVE accepted the Natan Holdings Funds pursuant to the terms of Mr. Burton's representations to Mr. Melikhov.

185.    Mr. Burton, by acting as DVE's Managing Director, became a subagent for Natan Holdings for the Natan Holdings Funds.

186.    Knowing that the Natan Holdings Funds were not DVE's, Mr. and Mrs. Burton caused DVE to disburse more than $738,141.21 of the Natan Holdings Funds to Mrs. Burton.

187.    DVE also wired $500,000 of the Natan Holdings Funds to "Hazlehurst & Blake RET Account."

188.    Upon information and belief, Hazlehurst & Blake were the closing attorneys for Burtons' purchase of the Burtons' Residence.

189.    Upon information and belief, the $500,000 wired from DVE's account to Hazlehurst & Blake was used to buy the Burtons' Residence.

190.    The transactions summarized in the preceding paragraphs 186 through 189 constituted a misappropriation of at least $1,238,141.21 of Natan Holdings' funds.

191.    Natan Holdings is entitled to a judgment against each of the Burtons, personally, for misappropriation in the amount of at least $1,238,141.21.

## Second Claim for Relief
## Fraud by DVE
## (North Carolina Uniform Voidable Transactions Act,
## N.C.G.S. § 39-23.4(a)(1))

192.   Natan Holdings and CCC incorporate the preceding allegations as if set forth in full herein.

193.   The actions by DVE with respect to the Natan Holdings Funds were made with the intent to hinder, delay, and defraud Natan Holdings.

194.   Natan Holdings is entitled to a judgment against DVE, in an amount of at least $1,238,141.21, for DVE's fraud.

195.   Natan Holdings also is entitled to a judgment for punitive damages against DVE for DVE's fraud.

## Third Claim for Relief
## Fraud by the Burtons
## (North Carolina Uniform Voidable Transactions Act,
## N.C.G.S. §§ 39-23.4(a)(1) and 39-23.7)

196.   Natan Holdings and CCC incorporate the preceding allegations as if set forth in full herein.

197.   Upon information and belief, the actions by Mr. and Mrs. Burton, following DVE's receipt of the Natan Holdings Funds, were made with the intent to hinder, delay, and defraud Natan.

198.   The Court should enter judgment in favor of Natan Holdings for the Burtons' fraud, as alleged in this Third Claim for Relief.

199.   Pursuant to N.C. Gen. Stat. § 39-23.7(a)(2), the Court should grant Natan a constructive trust on the Burtons' Residence.

**Fourth Claim for Relief**
**Misappropriation of CCC's Funds**

200.    Natan Holdings and CCC incorporate the preceding allegations as if set forth in full herein.

201.    The actions alleged in paragraphs 152 and 153 of this Complaint, above, constituted a misappropriation of CCC's funds.

202.    CCC is entitled to a judgment against Mr. Burton, personally, for misappropriation in an amount to be determined.

**Fifth Claim for Relief**
**Fraud by Mr. Burton on CCC by Misappropriation**
**(North Carolina Uniform Voidable Transactions Act,**
**N.C.G.S. §§ 39-23.4(a)(1) and 39-23.7(a)(2))**

203.    Natan Holdings and CCC incorporate the preceding allegations as if set forth in full herein.

204.    Upon information and belief, the actions alleged in paragraphs 152 and 153 of this Complaint were made by Mr. Burton with the intent to hinder, delay, and defraud CCC.

205.    CCC is entitled to a judgment against Mr. Burton, in an amount to be determined, for Mr. Burton's fraud.

206.    CCC also is entitled to a judgment for punitive damages against Mr. Burton for Mr. Burton's fraud.

28

### Sixth Claim for Relief
### Fraud by DVE and Mr. Burton on CCC by Transferring Title
### to the Bower Property
### (North Carolina Uniform Voidable Transactions Act,
### N.C.G.S. §§ 39-23.4(a)(1) and 39-23.7(a))

207.   Natan Holdings and CCC incorporate the preceding allegations as if set forth in full herein.

208.   The purported sale of the Bower Property by DVE to Marigny Oil & Gas was a transaction made with the intent to hinder, delay, and defraud CCC, as Natan Holdings' assignee.

209.   Under N. C. Gen. Stat. § 39-23.7(a)(1), the Court should avoid the transfer of the Bower Property from DVE to Marigny Oil & Gas.

210.   Under N. C. Gen. Stat. § 39-23.7(a)(2), the Court should grant CCC a constructive trust or a resulting trust on the Bower Property.

211.   CCC also is entitled to a judgment for punitive damages against DVE and Mr. Burton.

### Seventh Claim for Relief
### Veil Piercing/Alter Ego Liability for Mrs. Burton

212.   Natan Holdings and CCC incorporate the preceding allegations as if set forth in full herein.

213.   Mrs. Burton has always owned most of the membership interests in DVE since DVE's formation.

214.   In DVE's Operating Agreement, dated July 8, 2014 (DVE filed a copy with its petition, at Doc. 1 (at 10–22) in chapter 11 case no. 23-30148), DVE appointed

Mr. Burton as DVE's Managing Director and granted him the authority to manage DVE and to execute contracts on behalf of DVE.

215.    Mr. and Mrs. Burton exercised total domination of DVE.

216.    DVE was run primarily to benefit Mr. and Mrs. Burton.

217.    Mrs. Burton let Mr. Burton act as DVE's Managing Director.

218.    Mrs. Burton did not stop Mr. Burton from using DVE to perpetrate a fraud on Natan Holdings, as alleged in this Complaint.

219.    Mrs. Burton participated in certain of Mr. Burton's fraudulent actions.

220.    Mrs. Burton's control of DVE resulted in Mr. Burton using DVE to perpetrate a fraud on Natan Holdings.

221.    Mrs. Burton's control of DVE was the proximate cause of Natan Holdings' damages, as alleged in this Complaint.

222.    Mrs. Burton personally benefitted from Mr. Burton's actions as Managing Director of DVE.

223.    DVE was run as a shield for Mr. Burton's actions that violated North Carolina's policies and statutes.

224.    Imposing liability on Mrs. Burton by setting aside DVE's corporate form is necessary to prevent fraud or to achieve equity.

225.    Natan Holdings is entitled to a judgment against Mrs. Burton for all amounts that DVE owes Natan Holdings or CCC, as Natan Holdings' assignee.

### Eighth Claim for Relief
### Nondischargeability of the Burtons' Obligations
### (11 U.S.C. §§ 1328(a)(2) and 523(a)(2); 28 U.S.C. § 2201)

226.   Natan Holdings and CCC incorporate the preceding allegations as if set forth in full herein.

227.   11 U.S.C. § 1328(a)(2) states that a debtor cannot obtain a discharge of an obligation or debt that is nondischargeable under 11 U.S.C. § 523(a)(2).

228.   As alleged and complained of herein, the Burtons' debts and obligations are nondischargeable under 11 U.S.C. § 523(a)(2).

229.   The Court should enter a judgment against the Burtons declaring that their obligations to Natan Holdings and CCC are nondischargeable under 11 U.S.C. § 523(a)(2).

### Ninth Claim for Relief
### Nondischargeability of Mr. Burton's Obligations to CCC
### (11 U.S.C. §§ 1328(a)(2) and 523(a)(4); 28 U.S.C. § 2201)

230.   Natan Holdings and CCC incorporate the preceding allegations as if set forth in full herein.

231.   Mr. Burton's diversion and improper use of CCC's funds, as alleged in paragraphs 152 and 153 of this Complaint, occurred while Mr. Burton was an agent of CCC.

232.   As alleged in paragraph 151 of this Complaint, CCC engaged Mr. Burton to manage CCC's oil and gas operations in May 2022.

233. As part of this engagement, CCC gave Mr. Burton access to and the right to use CCC's accounts for the payment of CCC's expenses incurred in connection with oil and gas production.

234. As alleged in paragraph 152 of this Complaint, Mr. Burton misappropriated CCC's funds and tried to conceal the misappropriation from CCC by submitting fabricated invoices to CCC.

235. As alleged in paragraph 153 of this Complaint, Mr. Burton also tried to conceal his misappropriation of CCC's funds by remitting payments to CCC's creditors, employees, vendors in amounts that were less than Mr. Burton had withdrawn from CCC's accounts.

236. Upon information and belief, Mr. Burton had actual fraudulent intent with respect to the transactions described in paragraphs 152, 153, 234, and 235 of this Complaint.

237. Upon information and belief, Mr. Burton had no belief, reasonable or otherwise, that he had any legitimate right of entitlement to the amounts he misappropriated from CCC in 2022.

238. The Court should enter a judgment against Mr. Burton declaring that his obligations to CCC are nondischargeable under 11 U.S.C. § 523(a)(4).

**Tenth Claim for Relief**
**Injunction to Prevent the Burtons, DVE, and Marigny Oil & Gas**
**From Interfering with CCC's Rights Regarding the Bower Property**

239.    CCC incorporates the preceding allegations as if set forth in full herein.

240.    As alleged above, the transfer of title to the Bower Property from DVE to Marigny Oil & Gas is a voidable conveyance due to fraud.

241.    Marigny Oil & Gas's purported purchase of the Bower Property, including its preparation of the Deed (Ex. 20) and its actions since February 23, 2023, regarding the Bower Property were made with the intent to hinder, delay, or defraud CCC.

242.    Upon information and belief, entry of an injunction is necessary to prevent the Burtons, DVE, Marigny Oil & Gas, and Marigny Oil & Gas's principals and agents from interfering with CCC's rights in the Bower Property, whether as a lessee or as the owner of the title to the Bower Property through the Kansas foreclosure.

**WHEREFORE**, CCC and Natan Holdings request that the Court:

A.      In respect of the First Claim for Relief, enter a judgment, for Natan Holdings, against each of the Burtons for misappropriation in the amount of at least $1,238,141.21;

B.      Also in respect of the First Claim for Relief, enter an award for punitive damages against the Burtons under the authority of Chapter 1D of the North Carolina General Statutes;

C.      In respect of the Second Claim for Relief, against DVE, in an amount of at least $1,238,141.21, for Natan Holdings for DVE's fraud;

D.      Also in respect of the Second Claim for Relief, enter an award for punitive damages against DVE under the authority of Chapter 1D of the North Carolina General Statutes;

E.      In respect of the Third Claim for Relief, enter judgment for Natan Holdings for the Burtons' fraud and impose a constructive or resulting trust on the Burtons' Residence;

F.      Also in respect of the Third Claim for Relief, enter an award for punitive damages against the Burtons under the authority of Chapter 1D of the North Carolina General Statutes;

G.      In respect of the Fourth Claim for Relief, enter judgment, for CCC, against Mr. Burton for misappropriation in an amount to be determined;

H.      Also in respect of the Fourth Claim for Relief, enter an award for punitive damages against Mr. Burton under the authority of Chapter 1D of the North Carolina General Statutes;

I.      In respect of the Fifth Claim for Relief, enter judgment for CCC for Mr. Burton's fraud, in an amount to be determined at trial;

J.      Also in respect of the Fifth Claim for Relief, enter an award for punitive damages against Mr. Burton under the authority of Chapter 1D of the North Carolina General Statutes;

K.      In respect of the Sixth Claim for Relief, avoid the transfer of the Bower Property from DVE to Marigny Oil & Gas;

L.      In respect of the Seventh Claim for Relief, enter judgment against Mrs. Burton, for Natan Holdings, for all amounts that DVE owes Natan Holdings or CCC, in its capacity as Natan Holdings' assignee;

M.      Also in respect of the Seventh Claim for Relief, enter an award for punitive damages against Mrs. Burton under the authority of Chapter 1D of the North Carolina General Statutes;

N.      In respect of the Eighth Claim for Relief, enter a judgment declaring that the obligations of Mr. and Mrs. Burton to Natan Holdings and CCC are nondischargeable under 11 U.S.C. § 523(a)(2);

O.      In respect of the Ninth Claim for Relief, enter a judgment declaring that the obligations of Mr. Burton to CCC for his misappropriation of CCC's funds are nondischargeable under 11 U.S.C. § 523(a)(4);

P.      In respect of the Tenth Claim for Relief, permanently enjoin DVE, each of the Burtons, Marigny Oil & Gas, and their respective principals, agents, members, managers, heirs, assigns, and successors from taking any action to interfere with CCC's rights to and in respect of the Lease and the Bower Property;

Q.      Tax the costs of this action on defendants DVE, James Reuben Burton, Jr., Susan Hunt Burton, and Marigny Oil & Gas, LLC, jointly and severally; and

R.      Grant CCC and Natan Holdings such additional relief as the Court deems equitable, or otherwise reasonable and just.

March 24, 2023

/s/ Bradley E. Pearce
Bradley E. Pearce
NC State Bar No. 18368
PEARCE LAW PLLC
101 N. Tryon Street, Suite 600
Charlotte, NC 28246
704-910-6385
980-321-0593 (fax)
brad@pearcepllc.com

*Counsel for Crypto Colo Center Corp. and Natan Holdings, LLC*

## INDEX OF EXHIBITS

| Exhibit No. | Exhibit Description |
|---|---|
| 1 | Executive Summary for KLMKH, Inc., a North Carolina corporation (the "North Carolina Company") |
| 2 | July 31, 2019 Cash Flow Statement for the North Carolina Company |
| 3 | Balance sheet for the North Carolina Company |
| 4 | ARC Volumetric Production Purchase Agreement, dated February 20, 2020 |
| 5 | Bill of Sale and Conveyance of Global Energy Solutions |
| 6 | Assignment of Contracts, Minerals, and Intangibles, dated February 23, 2020, by the North Carolina Company for the benefit of ARC |
| 7 | Security Agreement, dated February 21, 2020, by and between the North Carolina Company and ARC |
| 8 | $3,425,000 Promissory Note, dated February 21, 2020, by Natan Holdings in favor of ARC |
| 9 | Forged Production Reports |
| 10 | January 21, 2021, email from James Reuben Burton, Jr. to Anthony Melikhov, Susan Hunt Burton, et al. |
| 11 | Complaint, ARC LPW I, LLC v. KLMKH, Inc., Civil Action No. 4:21-cv-926 (S.D. Tex.) |
| 12 | Stipulation and Order Disposing of Action and Claims and Consenting to Entry of Judgment |
| 13 | Email from Mr. Burton to Mr. Melikhov, June 7, 2020, at 2:29 p.m. |
| 14 | Deed for the Burtons' Residence |
| 15 | Screen shots of text messages from Mr. Burton to Mr. Melikhov, from September 16, 2022, and September 22, 2022 |
| 16 | Default Judgment, May 12, 2021, in *Natan Holdings, LLC v. Dei Vitae Enterprises, LLC,* case no. 21-CVS-3227, in the Superior Court Division of the General Court of Justice for Mecklenburg County, North Carolina |
| 17 | Assignment of Judgment, November 16, 2022, by DVE |
| 18 | Notice of Assignment of Judgment and Substitution of Judgment Creditor, filed November 21, 2022, in the Jefferson County, Kansas, District Court, case no. JF-2022-000026 |
| 19 | Lease Agreement, dated as of February 16, 2022, by and between DVE and CCC |
| 20 | Marigny Partners' Motion to Intervene, filed on November 18, 2022 |

| 21 | DVE and Marigny Partners Ltd. Response to [CCC's] Motion to Confirm Sheriff's Sale, filed on December 16, 2022, in the Jefferson County, Kansas, District Court |
|---|---|
| 22 | General Warranty Deed, filed with the Jefferson County, Kansas, Register of Deeds on February 27, 2023, at file number 2023R0447 |
| 23 | Email from Mr. Burton to Donato Guadagnoli [CCC's general counsel] and Max Smetannikov [CCC's Chief Executive Officer], August 5, 2022, at 7:42 a.m. |
| 24 | Correspondence from Marigny Oil and Gas to Jefferson County, February 24, 2023 |
| 25 | Email from ldoneill@oneill-company.com to Dustin Parks (dparks@jfcountyks.com) and others, February 27, 2023, at 1:37 p.m. |
| 26 | *Attorney Grievance Comm'n of Maryland v. Lawrence Daniel O'Neill,* Misc. Docket AG No. 41 (Md. Ct. App. March 9, 2022 |
| 27 | Letter of Intent from Marigny Partners Ltd. to the Board of Directors of KLMKH, July 29, 2022 |
| 28 | Attestation Letter and Proof of Client Funds, from Lawrence Daniel O'Neill to the Board of Directors of KLMKH, August 1, 2022 |
| 29 | Seller's Closing Statement and Purchaser's Closing Statement, showing a settlement date of March 24, 2020 |
| 30 | Correspondence from Justice B. King to David E. Bengston, March 8, 2023 |

# United States Bankruptcy Court
# Western District Of North Carolina

| | | |
|---|---|---|
| **CRYPTO COLO CENTER CORP**<br>**and**<br>**NATAN HOLDINGS, LLC,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Adv. Pro. No. _____** |
| **DEI VITAE ENTERPRISES, LLC,**<br>**JAMES REUBEN BURTON, JR.**<br>**SUSAN HUNT BURTON, and**<br>**MARIGNY OIL AND GAS, LLC,** | ) ) ) ) ) | |
| **Defendants.** | ) ) | |
| **In re:** | ) ) | |
| **DEI VITAE ENTERPRISES, LLC,** | ) ) | Case No. 23-30148<br>Chapter 11 |
| **Debtor.** | ) ) | |
| **In re:** | ) ) | |
| **JAMES REUBEN BURTON, JR.,**<br>**and SUSAN HUNT BURTON,** | ) ) ) | Case No. 23–30128<br>Chapter 13 |
| **Debtors.** | ) ) | |

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of the clerk:                    Clerk of Court
                                         U.S. Bankruptcy Court
                                         Western District of North Carolina
                                         401 West Trade Street, Suite 2500
                                         Charlotte, NC 28202

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

Name and Address of Plaintiffs' Attorney:    Bradley E. Pearce
                                             Pearce Law PLLC
                                             101 N. Trade Street, Ste 600
                                             Charlotte, NC 28246

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

                                         Steven J. Salata
                                         Clerk of the Bankruptcy Court

    Date: _____        By: _____(Deputy Clerk)

## CERTIFICATE OF SERVICE

I, <u>Bradley E. Pearce</u> (name), certify that service of this summons and a copy of the complaint was made _____ (date) by:

☒ Mail service: Regular first-class United States mail, postage fully pre-paid, addressed to:

> Dei Vitae Enterprises, LLC
> c/o Susan Hunt Burton
> 105 Graham Hall Court
> Matthews, NC 28104

☐ Personal Service: By leaving the process with the defendant or with an officer or agent of defendant at:

☐ Residence Service: By leaving the process with the following adult at:

☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

☐ Publication: The defendant was served as follows: [Describe briefly]

☐ State Law: The defendant was served pursuant to the laws of the State of North Carolina, as follows: [Describe briefly]

If service was made by personal service, by residence service, or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date _____      Signature _____

Print Name:          <u>Bradley E. Pearce</u>

Business Address:    <u>101 N. Tryon Street, Ste 600</u>

<u>Charlotte, NC 28246</u>

3

# United States Bankruptcy Court
# Western District Of North Carolina

|  |  |  |
|---|---|---|
| **CRYPTO COLO CENTER CORP.** | ) | |
| **and** | ) | |
| **NATAN HOLDINGS, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Adv. Pro. No. _____** |
| | ) | |
| **DEI VITAE ENTERPRISES, LLC,** | ) | |
| **JAMES REUBEN BURTON, JR.** | ) | |
| **SUSAN HUNT BURTON, and** | ) | |
| **MARIGNY OIL & GAS, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **In re:** | ) | |
| | ) | |
| **DEI VITAE ENTERPRISES, LLC,** | ) | Case No. 23-30148 |
| | ) | Chapter 11 |
| **Debtor.** | ) | |
| | ) | |
| **In re:** | ) | |
| | ) | |
| **JAMES REUBEN BURTON, JR.,** | ) | Case No. 23–30128 |
| **and SUSAN HUNT BURTON,** | ) | Chapter 13 |
| | ) | |
| **Debtors.** | ) | |
| | ) | |

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of the clerk:                    Clerk of Court
                                         U.S. Bankruptcy Court
                                         Western District of North Carolina
                                         401 West Trade Street, Suite 2500
                                         Charlotte, NC 28202


At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

Name and Address of Plaintiffs' Attorney:    Bradley E. Pearce
                                             Pearce Law PLLC
                                             101 N. Trade Street, Ste 600
                                             Charlotte, NC 28246


If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.


**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**


                                         Steven J. Salata
                                         Clerk of the Bankruptcy Court


      Date: _____      By: _____(Deputy Clerk)

# CERTIFICATE OF SERVICE

I, <u>Bradley E. Pearce</u> (name), certify that service of this summons and a copy of the complaint was made _____(date) by:

☒ Mail service: Regular first-class United States mail, postage fully pre-paid, addressed to:

James Reuben Burton, Jr.
105 Graham Hall Court
Matthews, NC 28104

☐ Personal Service: By leaving the process with the defendant or with an officer or agent of defendant at:

☐ Residence Service: By leaving the process with the following adult at:

☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

☐ Publication: The defendant was served as follows: [Describe briefly]

☐ State Law: The defendant was served pursuant to the laws of the State of North Carolina, as follows: [Describe briefly]

If service was made by personal service, by residence service, or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date _____    Signature _____

Print Name:            <u>Bradley E. Pearce</u>

Business Address:    <u>101 N. Tryon Street, Ste 600</u>

<u>Charlotte, NC 28246</u>

# United States Bankruptcy Court
# Western District Of North Carolina

| | | |
|---|---|---|
| **CRYPTO COLO CENTER CORP.** | ) | |
| **and** | ) | |
| **NATAN HOLDINGS, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Adv. Pro. No. _____** |
| | ) | |
| **DEI VITAE ENTERPRISES, LLC,** | ) | |
| **JAMES REUBEN BURTON, JR.** | ) | |
| **SUSAN HUNT BURTON, and** | ) | |
| **MARIGNY OIL & GAS, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **In re:** | ) | |
| | ) | |
| **DEI VITAE ENTERPRISES, LLC,** | ) | Case No. 23-30148 |
| | ) | Chapter 11 |
| **Debtor.** | ) | |
| | ) | |
| **In re:** | ) | |
| | ) | |
| **JAMES REUBEN BURTON, JR.,** | ) | Case No. 23–30128 |
| **and SUSAN HUNT BURTON,** | ) | Chapter 13 |
| | ) | |
| **Debtors.** | ) | |

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of the clerk:                    Clerk of Court
                                         U.S. Bankruptcy Court
                                         Western District of North Carolina
                                         401 West Trade Street, Suite 2500
                                         Charlotte, NC 28202


At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

Name and Address of Plaintiffs' Attorney:    Bradley E. Pearce
                                             Pearce Law PLLC
                                             101 N. Trade Street, Ste 600
                                             Charlotte, NC 28246


If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.


**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**


                                         Steven J. Salata
                                         Clerk of the Bankruptcy Court


        Date: _____        By: _____(Deputy Clerk)

# CERTIFICATE OF SERVICE

I, <u>Bradley E. Pearce</u> (name), certify that service of this summons and a copy of the complaint was made _____ (date) by:

☒ Mail service: Regular first-class United States mail, postage fully pre-paid, addressed to:

> Susan Hunt Burton
> 105 Graham Hall Court
> Matthews, NC 28104

☐ Personal Service: By leaving the process with the defendant or with an officer or agent of defendant at:

☐ Residence Service: By leaving the process with the following adult at:

☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

☐ Publication: The defendant was served as follows: [Describe briefly]

☐ State Law: The defendant was served pursuant to the laws of the State of North Carolina, as follows: [Describe briefly]

If service was made by personal service, by residence service, or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date _____    Signature _____

Print Name:        <u>Bradley E. Pearce</u>

Business Address:    <u>101 N. Tryon Street, Ste 600</u>

<u>Charlotte, NC 28246</u>

# United States Bankruptcy Court
# Western District Of North Carolina

| | |
|---|---|
| **CRYPTO COLO CENTER CORP** )<br>**and** )<br>**NATAN HOLDINGS, LLC,** )<br> )<br>    **Plaintiffs,** )<br> )<br>**v.** )<br> )<br>**DEI VITAE ENTERPRISES, LLC,** )<br>**JAMES REUBEN BURTON, JR.** )<br>**SUSAN HUNT BURTON, and** )<br>**MARIGNY OIL AND GAS, LLC,** )<br> )<br>    **Defendants.** )<br> )<br> )<br>**In re:** )<br> )<br>**DEI VITAE ENTERPRISES, LLC,** )<br> )<br>    **Debtor.** )<br> )<br> )<br>**In re:** )<br> )<br>**JAMES REUBEN BURTON, JR.,** )<br>**and SUSAN HUNT BURTON,** )<br> )<br>    **Debtors.** )<br> )| **Adv. Pro. No. _____**<br><br><br><br><br><br><br><br><br><br><br><br>Case No. 23-30148<br>Chapter 11<br><br><br><br><br><br>Case No. 23–30128<br>Chapter 13 |

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of the clerk:                          Clerk of Court
                                               U.S. Bankruptcy Court
                                               Western District of North Carolina
                                               401 West Trade Street, Suite 2500
                                               Charlotte, NC 28202


At the same time, you must also serve a copy of the motion or answer upon the
plaintiff's attorney.

Name and Address of Plaintiffs' Attorney:      Bradley E. Pearce
                                               Pearce Law PLLC
                                               101 N. Trade Street, Ste 600
                                               Charlotte, NC 28246


If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.


**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL
BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY
THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE
TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE
COMPLAINT.**


                                 Steven J. Salata
                                 Clerk of the Bankruptcy Court

        Date: _____      By: _____(Deputy Clerk)

# CERTIFICATE OF SERVICE

I, <u>Bradley E. Pearce</u> (name), certify that service of this summons and a copy of the complaint was made _____ (date) by:

☒ Mail service: Regular first-class United States mail, postage fully pre-paid, addressed to:

| | |
|---|---|
| Marigny Oil and Gas, LLC<br>c/o Cloud Peak Law, LLC<br>1095 Sugar View Dr., Ste 500<br>Sheridan, WY 82801 | Marigny Oil & Gas, LLC<br>1309 Coffen Avenue, Ste 5575<br>Sheridan, WY 82801 |

☐ Personal Service: By leaving the process with the defendant or with an officer or agent of defendant at:

☐ Residence Service: By leaving the process with the following adult at:

☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

☐ Publication: The defendant was served as follows: [Describe briefly]

☐ State Law: The defendant was served pursuant to the laws of the State of North Carolina, as follows: [Describe briefly]

If service was made by personal service, by residence service, or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date _____     Signature _____

Print Name:          <u>Bradley E. Pearce</u>

Business Address:    <u>101 N. Tryon Street, Ste 600</u>

<u>Charlotte, NC 28246</u>